```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


AMIR MEMIC,                        )
                                   )
            Plaintiff,             )
                                   )
      v.                           )     No. 4:10 CV 1692 DDN
                                   )
ERIC HOLDER, et al.,               )
                                   )
            Defendants.            )
```

## MEMORANDUM

This action is before the court on the motion of defendants Eric Holder, Janet Napolitano, Alejandro Mayorkas, Michael Jaromin, Chester S. Moyer, and Robert S. Mueller, III, to dismiss. (Doc. 4.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Oral arguments were heard on January 6, 2011.

## I. BACKGROUND

On September 12, 2010, plaintiff Amir Memic commenced this action against defendants Eric Holder, Attorney General of the United States; Janet Napolitano, Secretary of the United States Department of Homeland Security; Alejandro Mayorkas, Director of the Bureau of Citizenship and Immigration Services (BCIS); Michael Jaromin, District Director of the Kansas City District Office of the BCIS; Chester S. Moyer, Officer in Charge of the St. Louis Sub-Office of the BCIS; and Robert S. Mueller, III, Director of the Federal Bureau of Investigation, in their official capacities, to compel adjudication of his naturalization application.

According to his judicial complaint, plaintiff is a Bosnian national who has been a Lawful Permanent Resident of the United States since August 26, 1998. In September 2009 plaintiff applied for naturalization. As a part of the application process, plaintiff was scheduled for a naturalization interview on January 13, 2010. However, the interview was cancelled and has not been rescheduled. Plaintiff is still awaiting the disposition of his application for naturalization.

Plaintiff has contacted the BCIS in an attempt to move his application forward, but his efforts thus far have been futile.

In Count I of his complaint, plaintiff alleges that defendants Napolitano, Mayorkas, Jaromin, and Moyer violated the Administrative Procedure Act (APA) by failing to adjudicate his application within a reasonable time after submission.

In Count II, plaintiff alleges that defendants Holder and Mueller violated the APA by not completing the necessary FBI name checks in a timely manner.

In Count III, plaintiff alleges that defendants Napolitano, Mayorkas, Jaromin, and Moyer violated 8 U.S.C. § 1447(b) by not adjudicating his application for naturalization within 120 days after his naturalization examination.

In Count IV, plaintiff alleges a violation of the Due Process Clause of the Fifth Amendment against all defendants for failing to adjudicate his application for naturalization within 180 days after it was filed and within 120 days after the required naturalization examination, because of the actions of the FBI.

And in Count V, plaintiff alleges a violation of the notice-and-comment requirements of the APA against defendants Napolitano, Mayorkas, Jaromin, and Moyer. Plaintiff alleges that the defendants expanded the FBI name check requirement without the required public comment procedure.

## II. MOTION TO DISMISS

Defendants move jointly to dismiss plaintiff's complaint (a) for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), and (b) for failure to state a claim under Rule 12(b)(6). Defendants argue that the BCIS is still conducting its investigation of plaintiff, and thus should not be compelled to act now. Specifically, defendants argue that there is no clear, non-discretionary duty to process applications to adjust immigration status within a certain time, and thus there is no jurisdiction under the APA or the Mandamus Act. Defendants also argue that Congress chose to not impose a time limit on processing naturalization applications; that any time limit would be speculative

in the absence of Congressional action; and that no specific time limit could be imposed because administrative judgment is used while conducting investigations, yielding varying adjudication times.

Plaintiff responds that he has a right to have his naturalization application adjudicated within a reasonable time of filing because he has a right to the adjudication of his application generally, and the relevant statutes impose a reasonable time period for adjudication. Plaintiff also argues that unfettered agency discretion would undermine the statutory requirements compelling adjudication of naturalization applications. Plaintiff further argues that the absence of a specific time limit is not dispositive.

Defendants reply that Congress did not set the pace at which the BCIS must investigate whether an applicant is eligible for naturalization, and therefore there is no clear, non-discretionary duty to act. Defendants also reply that the investigative delay in processing plaintiff's application is not unreasonable and deference should be given to the agency's discretion.

### III.  MOTION TO DISMISS STANDARDS

**A. Subject Matter Jurisdiction: Fed. R. Civ. P. 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) challenges whether the district court possesses subject matter jurisdiction to hear the case. Johnson v. United States, 534 F.3d 958, 964 (8th Cir. 2008). As the party asserting subject matter jurisdiction, plaintiff bears the burden of establishing its existence. Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A., 551 F.3d 812, 816 (8th Cir. 2009).

The parties have agreed that the jurisdictional dispute can be decided solely on the basis of the allegations made in plaintiff's complaint. Therefore, the court confines itself to that document, and considers all factual allegations contained therein as true. Muharemovic v. Jaromin, No. 4:07 CV 1427 DDN, 2008 WL 495610, at *1 (E.D. Mo. Feb. 19, 2008); Tan v. Chertoff, No. 4:07 CV 236 HEA, 2007 WL 1880742, at *2 (E.D. Mo. June 29, 2007).

**B.   Failure to State a Claim: Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint. See Carton v. General Motor Acceptance Corp., 611 F.3d 451, 454 (8th Cir 2010). To survive a motion to dismiss under this rule, the complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). To meet the plausibility standard, the complaint must contain "more than labels and conclusions." Id. at 555. Rather, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). The Federal Rules of Civil Procedure demand only that a complaint present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Forms 10 to 21, attached to the federal civil rules, are examples of the "simplicity and brevity that [Rule 8] contemplate[s]." Fed. R. Civ. P. 84. See Hamilton v. Palm, 621 F.3d 816, 818 (8th Cir. 2010).

Furthermore, the complaint must be liberally construed in the light most favorable to the plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008). The court must accept the facts alleged as true, even if doubtful. Twombly, 550 U.S. at 555. Thus, a well-pleaded complaint may proceed even if it appears that recovery is very remote or unlikely, so long as it meets the plausibility standard. Id.

## IV.   DISCUSSION

Congress has reposed in the Attorney General the "sole authority to naturalize persons as citizens of the United States." 8 U.S.C. § 1421(a). In 2002, Congress transferred the responsibility for adjudicating naturalization petitions to the Department of Homeland Security's Bureau of Citizenship and Immigration Services (BCIS). 6 U.S.C. § 271(b)(2).

Congress and the BCIS have prescribed certain steps in the naturalization process:

First, the applicant must make and file with the Attorney General a sworn, written application for naturalization. 8 U.S.C. § 1445(a).

Once the application is filed, a BCIS employee must conduct a "personal investigation" of the applicant, unless the Attorney General waives the investigation. 8 U.S.C. § 1446(a); 8 C.F.R. § 335.1. As part of this investigation, the BCIS uses the FBI to conduct a criminal background check, during which the FBI checks administrative and criminal records. 8 C.F.R. § 335.2(b).

After the FBI record check, the BCIS must schedule and conduct an in-person "examination" of the applicant. 8 U.S.C. § 1446(b); 8 C.F.R. § 335.2(a)-(c). During the "examination," the BCIS tests the applicant for proficiency in the English language and knowledge of United States history and government. See 8 U.S.C. § 1423(a); 8 C.F.R. §§ 312.1(a), 312.2(a). Following the § 1446 "examination," the designated BCIS employee has 120 days to grant or deny the application for naturalization. 8 U.S.C. § 1447(b); 8 C.F.R. § 335.3. If the application is granted, the applicant must participate in a citizenship oath ceremony before the Attorney General or before a federal court to complete the naturalization process. 8 U.S.C. § 1448(a).

**A. Counts II and IV: The FBI Background Check**

Defendants argue in their motion to dismiss that the FBI has fulfilled its duties to the BCIS because it completed plaintiff's name check on October 26, 2009, and thus whatever duty the FBI might have had to plaintiff has been fulfilled. Defendants argue that the FBI should be dismissed.

Plaintiff accepts that the FBI completed the name check on October 26, 2009, and states that the FBI did not cause any unreasonable delay in the processing of his application. Plaintiff consents to the dismissal of defendant Robert S. Mueller, and voluntarily dismisses all claims against the FBI.

Therefore, the Count II and Count IV claims against defendant Robert S. Mueller and the FBI are dismissed.

**B. Count III: A Determination Within 120 Days After Examination**

Plaintiff states that he erroneously included Count III in his complaint. Plaintiff states that Count III is premised on the requirement in 8 U.S.C. § 1447(b) that his application be ruled within 120 days after the examination. Plaintiff agrees that § 1447(b) does not apply to him because the BCIS has not scheduled a naturalization examination/interview for him. Plaintiff thus moves to voluntarily dismiss Count III. Defendants do not oppose this. Therefore, Count III is dismissed.

**C. Subject Matter Jurisdiction Over The Remaining Claims**

In his complaint, plaintiff invokes the subject matter jurisdiction granted by (1) 28 U.S.C. § 1331 (federal question jurisdiction); (2) the Administrative Procedure Act, 5 U.S.C. § 701 et seq.;(3) the Declaratory Judgment Act, 28 U.S.C. § 2201; and (4) the Mandamus Act, 28 U.S.C. § 1361.

The federal question jurisdictional statute provides:

> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

28 U.S.C. § 1331. And the Mandamus Act provides:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

28 U.S.C. § 1361.

Plaintiff's claims for relief are founded on the Constitution and laws of the United States. Putting aside those claims in Counts II, III, and IV that plaintiff withdrew, plaintiff has not made any "wholly insubstantial and frivolous" claim to which jurisdiction would not attach. Bell v. Hood, 327 U.S. 678, 682-83 (1946). Therefore, the court has the subject matter jurisdiction to decide the merits of the portions of the case that remain. Id. at 682-83; Sawan v. Chertoff, 589 F. Supp. 2d 817, 824-25 (S.D. Tex. 2008); Ali v. Frazier, 575 F. Supp. 2d 1084, 1088-89 (D. Minn. 2008). See also Al-Rifahe v. Mayorkas, Civil No. 10-1971 (JRT/FLN), 2011 WL 825668, at *5 (D. Minn. Mar. 7, 2011). Plaintiff's entitlement to relief is different from the issue of the

court's authority to decide entitlement to relief. Sawan, 589 F. Supp.2d at 825; Ali, 575 F. Supp. 2d at 1088-89. For that purpose, the court now turns to whether plaintiff's complaint states a claim for relief. Sawan, 589 F. Supp.2d at 825; Ali, 575 F. Supp. 2d at 1088-89.

**D. Legal Sufficiency of the Remaining Claims**

    **1. Counts I and II: The APA and the Mandamus Act**

The APA states that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. An "agency action" includes the failure to act. 5 U.S.C. § 551(13). The APA also states that "within a reasonable time, each agency *shall* proceed to conclude a matter presented to it." 5 U.S.C. § 555(b) (emphasis added). The APA further states that "[t]he reviewing court shall compel agency action unlawfully withheld or *unreasonably delayed* . . . ." 5 U.S.C. § 706(1) (emphasis added). See Muharemovic, 2008 WL 495610, at *2. "[T]he only agency action that can be compelled under the APA is action legally *required*." Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 63 (2004).

For relief under the Mandamus Act, the Eighth Circuit has prescribed three conditions: (1) the plaintiff must have a clear right to the relief sought, (2) the defendant must have a clear duty to perform the act demanded, and (3) the plaintiff must have no adequate alternative remedy for obtaining the relief sought. Longie v. Spirit Lake Tribe, 400 F.3d 586, 591 (8th Cir. 2005). Mandamus is an extraordinary remedy, Pittston Coal Group v. Sebben, 488 U.S. 105, 121 (1988), and is available "for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616-17 (1984) (citations omitted). See also Muharemovic, 2008 WL 495610, at *1-2. The "party seeking mandamus has the burden of showing that its right to issuance of the writ is clear and indisputable." Will v. United States, 389 U.S. 90, 96 (1967) (internal quotations omitted).

Defendants argue that there is no non-discretionary duty to complete the investigation and to conduct the "examination" within a

specific time period, and that, if Congress intended to impose a time limitation on the adjudication of naturalization applications, it would have expressly done so. See Saini v. Heinauer, 552 F. Supp. 2d 974, 978-79 (D. Neb. 2008); Alzuraiki v. Heinauer, 544 F. Supp. 2d 862, 866 (D. Neb. 2008). Plaintiff argues that the APA imposes a reasonableness standard on the BCIS in processing applications for naturalization. See 5 U.S.C. § 555(b).

The BCIS has a regulatory, non-discretionary duty to grant or deny naturalization applications and to provide the reasons for the decisions. 8 C.F.R. § 316.14(b)(1) ("[S]ubject to supervisory review, the employee of the [BCIS] who conducts the examination [on an application for naturalization] *shall* determine whether to grant or deny the application . . . .") (emphasis added).

That said, neither the applicable statutes nor the applicable regulations require the BCIS to complete its investigation and conduct an "examination" within a specified period of time. Khosravani v. Chertoff, No. 08-CV-0220 W(CAB), 2008 WL 2047996, at *2 (S.D. Cal. May 13, 2008); Arbesu v. Keisler, No. 07-22914-CIV, 2008 WL 1914864, at *1 (S.D. Fla. Apr. 28, 2008); Mighri v. Gonzales, Civil Action No. 07-03624, 2007 WL 4463590, at *4 (E.D. Pa. Dec. 19, 2007). See also 8 U.S.C. § 1255(a) ("The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe . . . .").

As a result, the BCIS "has a non-discretionary duty to *act* on an application, a discretionary duty as to the *pace* of processing the application, and a non-discretionary duty to *adjudicate* an application." Eldeeb v. Chertoff, 619 F. Supp. 2d 1190, 1205 (M.D. Fla. 2007).

As the facts alleged in the petition indicate, the BCIS does not have a currently pending examination/interview scheduled for plaintiff. This court has determined that the statutorily mandated "examination" of the naturalization application is concluded with the conclusion of the personal interview of the applicant. Shalabi v. Gonzales, No. 4:06 cv 866 RSW, 2006 WL 3032413, at *4 (E.D. Mo. October 23, 2006). Congress requires that the BCIS decide the application not later than

120 days after the examination. But, without the plaintiff's interview/examination having occurred, the 120 days has not yet begun to run. Thus, the issue before the court is whether plaintiff's judicial complaint states a claim by alleging that the scheduling of the personal interview by the BCIS has been unreasonably delayed.

A major principle that affects the outcome of this case is that great deference is afforded by the courts to the Executive Branch in determining whether or not to grant an application for naturalization. This is because such matters involve international relations, national security, and governmental funding, among other less critical governmental matters. Id. at *2. See also INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999) ("[J]udicial deference to the Executive Branch is especially appropriate in the immigration context . . . ."). In these areas the judiciary is not sufficiently informed to establish a reasonableness standard by which to judge whether or not a decision by the BCIS on an application for naturalization has been unreasonably delayed. Yan v. Mueller, Civil Action No. H-07-0313, 2007 WL 1521732, at *9 n.9 (S.D. Tex. May 24, 2007). Also, in the face of the BCIS's failure to hasten the pace of deciding naturalization applications, the courts are without the authority to require Congress to appropriate more funding for the BCIS operations. See Id.; Nguyen v. Gonzalez, No. H-07-0048, 2007 WL 713043, at *4 n.3 (S.D. Tex. Mar. 6, 2007).

This deference to the Attorney General has been limited by Congress's requirement that a decision on a naturalization application be made by BCIS within 120 days after the examination. There is no such statutory limitation on the deference due to BCIS in its regulation of the *pace* of naturalization application processing generally, which includes the time the examination/interview is held. Saini, 552 F. Supp. 2d at 978-79 ("As evidenced by the 120-day time limit of § 1447(b), when Congress intended time limitations on adjudication of naturalization petitions, it expressly created them."). See also Li v. Gonzales, Civil Action No. 06-5911 (SRC), 2007 WL 1303000, at *4 (D.N.J. May 3, 2007); Grinberg v. Swacina, 478 F. Supp. 2d 1350, 1352 (S.D. Fla. 2007).

Plaintiff points to the reasonableness standard set forth in the APA. However, this general standard of reasonableness is gainsaid by the deference accorded the government in deciding naturalization applications generally, see 8 U.S.C. § 1421(a) ("The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General"), and the absence in other relevant statutes of any specific deadline for conducting the interview/examination. The courts are unable to form a reasonableness standard against which to measure the propriety of any asserted delay by BCIS, when issues of international relations, national security, and Congressional funding may be involved. See Jiangang Chen v. Chertoff, No. CIV S-07-0093 GEB EFB PS, 2007 WL 2390359, at *6-7 (E.D. Cal. Aug. 20, 2007) (holding a "reasonable time" standard is "insufficient to guide a meaningful review of the agency's action, especially where the agency awaits necessary background and security information on plaintiffs"). See also Heckler v. Chaney, 470 U.S. 821, 830 (1985).

Plaintiff points to the "sense of Congress" legislation, found in 8 U.S.C. § 1571(b), that BCIS decision-making on applications for naturalization take no longer than 180 days after the initial date of filing of the application. This legislative statement is non-binding. See, e.g., Ryan v. Dedvukaj, No. 09-14178, 2009 WL 3809813, at *1-2 (E.D. Mich. Nov. 13, 2009) ("Section 1571(b) is merely a policy statement, worded in precatory terms; it does not create an obligation for Defendants to meet the 180-day deadline, nor does it give Plaintiffs a right of enforcement."); Carter v. Dept. of Homeland Security, No. 07-12953, 2008 WL 205248, at *2 n.1 (E.D. Mich. Jan. 24, 2008). Had Congress wished to make this standard mandatory, it could have done so, just as it had legislated the 120-day deadline for decision-making after the naturalization examination. However, it has not done so. See, e.g., Saini, 552 F. Supp. 2d at 978-79; Li, 2007 WL 1303000, at *4; Grinberg, 478 F. Supp. 2d at 1352.

In sum, at this stage of the naturalization process, the APA and Mandamus Act do not provide plaintiff a remedy. Therefore, dismissal of Counts I and II is appropriate.

### 2. Count IV: The Due Process Clause

The Fifth Amendment states, *inter alia*, that no person shall be "deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend V. Plaintiff argues that he has a right to have his investigation completed and his application adjudicated in a reasonable time. See 5 U.S.C. § 555(b). Defendants argue that plaintiff does not have a liberty interest in having his status adjusted to that of a citizen. See Osakwe v. Mukasey, 534 F.3d 977, 978 (8th Cir. 2008) ("failure to receive discretionary adjustment-of-status relief does not constitute the deprivation of a constitutionally-protected liberty interest . . ."); Jamieson v. Gonzales, 424 F.3d 765, 768 (8th Cir. 2005); Nativi-Gomez v. Ashcroft, 344 F.3d 805, 808-09 (8th Cir. 2003).

As previously discussed, the application of the APA reasonableness standard must give way to the deference to be shown to the Attorney General and the BCIS in the pace of deciding naturalization applications. Aguirre-Aguirre, 526 U.S. at 425; Shalabi, 2006 WL 3032413, at *2. Further, because Congress has not adopted an enforceable time standard for adjudicating naturalization applications, plaintiff has no constitutional right to adjudication of his naturalization application within a specific time period. Ahmed v. Holder, No. 4:08 CV 826 HEA, 2009 WL 3228675, at *7 (E.D. Mo. Sept. 30, 2009) ("[W]hile Plaintiffs have a reasonable expectation that their naturalization and adjustment applications will be adjudicated, they have presented no legitimate claim of entitlement sufficient to create a protected liberty interest."); Assadzadeh v. Mueller, Civil Action No. 07-2676, 2007 WL 3252771, at *7 (E.D. Pa. Oct. 31, 2007) ("Absent a specific mandate entitling Plaintiff to naturalization or processing of his application within a specific time-frame, Plaintiff does not have a *constitutional* right to timely adjudication of his application.") Cf. Mudric v. Attorney General, 469 F.3d 94, 99 (3d Cir. 2006) ("[T]he various discretionary privileges and benefits conferred on aliens by our federal immigration laws do not vest in aliens a constitutional right to have their immigration matters adjudicated in the most expeditious manner possible.").

### 3. Count V: Notice-and-Comment Procedures

Plaintiff argues that defendants violated 5 U.S.C. § 553 by failing to publish a notice for public comment in the Federal Register regarding their use of the FBI to conduct background checks. Defendant argues that plaintiff's notice-and-comment claim fails because the use of FBI background checks in the naturalization process is one of the "interpretative rules" that are exempted from the notice-and-comment requirements. 5 U.S.C. § 553(b)(A).

As defendants argue, "the 2002 changes in practice were not subject to notice-and-comment procedures," Ahmed, 2009 WL 3228675, at *7, because "the name-check requirement is a reasonable interpretation of the 'full criminal background check' required for naturalization by statute . . . ." Sawan, 589 F. Supp. 2d at 833. See also Hani v. Gonzales, No. 3:07-CV-517-S, 2008 WL 2026092, at *5 (W.D. Ky. May 8, 2008); Ahmadi v. Chertoff, No. C 07-03455 WHA, 2007 WL 3022573, at *7-9 (N.D. Cal. Oct. 15, 2007).

Therefore, Count V is dismissed.

### V. CONCLUSION

An appropriate Judgment Order is issued herewith sustaining defendants' motion to dismiss (Doc. 4).

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on April 11, 2011.